UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALEXANDRIA RIVERA-MAYSONET,

                      Plaintiff,     18-CV-1142
v.                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

## INTRODUCTION

Plaintiff Alexandria Rivera-Maysonet brought this action pursuant to Title II and Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 12, 15. For the reasons that follow, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is GRANTED IN PART and DENIED IN PART, the Commissioner's motion (ECF No. 15) is GRANTED, and the matter is remanded for further administrative proceedings.

## BACKGROUND

On October 20, 2014, Plaintiff filed applications for DIB and SSI alleging disability beginning on June 1, 2008. Administrative Record ("Tr.") at 234-44. ECF No. 9. After the applications were denied, Plaintiff timely requested a hearing. Tr. at 119-23.

On August 11, 2017, Plaintiff appeared with a non-attorney-representative, Sonia Sterrett, and testified at a hearing before Administrative Law Judge, Maria Herrero-Jaarsma ("the ALJ") through a Spanish interpreter. Tr. at 571-07. A Vocational Expert ("VE"), Joey Kilpatrick, also

1

testified at the hearing. Tr. at 599-06. The ALJ issued an unfavorable decision on September 22, 2017. Tr. at 14-32. Plaintiff then timely requested review by the Appeals Council, which the Council denied on August 13, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. at 1-8. Plaintiff subsequently filed this lawsuit.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the

ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2008. Tr. at 22. At step two, the ALJ found that Plaintiff suffered from several severe impairments: lupus arthritis, anemia, migraines, lumbar strain, and depression. *Id.* At step three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any listing. Tr. at 23-24. The ALJ then determined that Plaintiff retained the RFC to perform sedentary work with several limitations. Tr. at 24. Specifically, the ALJ found that Plaintiff

> requires changing positions from sitting to standing during the 8-hour workday while remaining on task[,] . . . can sit for up to 1 hour before having to shift positions and stand for 25 minutes before she needs to sit all while remaining on task[,] . . . occasionally push, pull, and occasionally climb ramps and stairs but should never climb ladders[,] . . . can occasionally balance on level surfaces and stoop (i.e.[,] bending at the waist)[,] but never kneel, crouch (i.e.[,] bending at the knees) and crawl[,] . . . can frequently but not constantly reach, handle (including gross manipulation), finger (including fine manipulation) and feel bilaterally. [Plaintiff] has limited ability to speak and understand English. [Plaintiff] should avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity[,] . . . can never tolerate exposure to hazards such as unprotected heights and moving machinery or moving mechanical parts[,] . . . should avoid working with bright or flickering lights such as would be experienced in welding or cutting metals[,] and should avoid exposure to loud noise, . . . [can] understand, carry out, and remember simple, routine tasks, involving only simple, work-related decisions, with few, if any, work place changes[,] . . . can work in a low stress environment (meaning with no supervisory responsibilities; no work at production rate pace and no fast-moving assembly line-type work; no independent decision-making required except with respect to simple, routine decisions; and no more than occasional changes in work routines, processes or settings) . . . . [Plaintiff] is limited to work that would not require a high level of attention to detail[,] can perform work requiring no more than occasional supervision[,][and] work that involves frequent contact and interaction with supervisors, and occasional contact and interaction with co-workers and the public.

Tr. at 24-25.

At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work. Tr. at 31. The ALJ then proceeded to step five, where she determined that there were jobs in the national economy that a person of Plaintiff's age, education and work experience could perform. Tr. at 32. Specifically, the ALJ found that Plaintiff could work as a lens inserter, call-out operator, and addresser. *Id.*

## II. Analysis

The parties do not dispute that remand is warranted. Plaintiff argues that remand for further administrative proceedings, or in the alternative, for calculation of benefits, is necessary because the ALJ rejected all of the medical opinions of the record and relied on her interpretation of bare medical findings to form a highly specific RFC. ECF No. 12-1 at 14-15, 22. Specifically, Plaintiff argues that it was error for the ALJ to reject the November 2015 and February 2016 opinions of Plaintiff's primary treating physician, Ellis Gomez, who provided the only opinion in the record regarding Plaintiff's physical and mental limitations. *Id.* at 16-20.[1] The Commissioner concedes that it was improper for the ALJ to reject Dr. Gomez's February 2016 opinion, but argues that calculation of benefits is not appropriate in this case and that the matter should, instead, be remanded back to the Commissioner for further proceedings. ECF No. 15-1 at 10-13.

Because the Commissioner has conceded that remand for consideration of Dr.Gomez's opinion is warranted here, the only question that this Court needs to decide is whether reversal and remand for calculation of benefits is the appropriate remedy in this case. This Court believes that it is not.

As a general matter, "[t]he fourth sentence of 42 U.S.C. § 405(g) authorizes a court to enter judgement [sic] affirming, modifying, or reversing the Commissioner's decision with or without

---

[1] She further argues that it was not proper for the Appeals Council to reject Dr. Gomez's November 2015 opinion because it was new and material evidence that would have changes the outcome of the ALJ's decision. *Id.* at 26-30.

5

remanding the cause for rehearing. A remand to the Commissioner is authorized when there are gaps in the administrative record and further development of evidence is required, or when the ALJ has misapplied legal standards." *VanValkenburg v. Astrue*, No. 09-CV-6060T, 2010 WL 455489, at *1 (W.D.N.Y. Feb. 4, 2010) (citing other sources). Section 405(g) allows reversal and remand solely for calculation of benefits without a rehearing "where [the] Court has . . . no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Rosa*, 168 F.3d at 83. Where "the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Giddings v. Astrue*, 333 F. App'x 649, 655 (2d Cir. 2009) ("[A] decision to reverse and direct an award for benefits should be made only when . . . substantial evidence on the record as a whole indicates that the [c]laimant is disabled and entitled to benefits.") (internal citations omitted). However, "when there are gaps in the administrative record or the ALJ has applied an improper legal standard, a court should remand the case to the Commissioner for the further development of the record." *Speruggia v. Astrue*, No. 05-CV-3532 (NGG), 2008 WL 818004, at *14 (E.D.N.Y. Mar. 26, 2008) (internal citation omitted).

The Court agrees with the Commissioner that remand for further administrative proceedings is necessary here so that the ALJ can properly evaluate medical opinions of Plaintiff's primary care physician, Dr. Gomez. Even though the Commissioner has only conceded to the ALJ's failure to properly consider Dr. Gomez's opinion regarding Plaintiff's mental limitations, ECF No. 15-14 at 10, the Court believes that the ALJ has also failed to apply proper legal standards when she considered Dr. Gomez's opinion regarding Plaintiff's physical limitations.[2]

---

[2] The Court agrees with the parties that the ALJ erred in her evaluation of Dr. Gomez's February 2016 opinion which she discounted because Dr. Gomez was not a specialist in psychology or psychiatry, and because the ALJ failed to

6

It is well-established that an opinion of a primary treating physician is entitled to "controlling" weight if the ALJ determines that the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). When the ALJ chooses not to afford "controlling" weight to the opinion of the treating physician, the ALJ must specifically explain the weight given to the opinion taking into consideration several factors, such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the relevant evidence supporting the opinion, the consistency of the opinion with the record as a whole, and whether the physician is a specialist in the area covering the particular medical issues. *Id.* at 129. Furthermore, the ALJ must give "good reasons" for not crediting the opinion of a treating physician. *Clark v. Comm'r*, 143 F.3d 115 (2d Cir.1998).

The parties do not dispute that Dr. Gomez was Plaintiff's primary care physician. On November 23, 2015, she filled out a medical report for determination of disability, in which she diagnosed Plaintiff with major depressive disorder, recurrent thought psychosis, dysthymic disorder, lupus arthritis, GERD, and lumbar pain, and opined that Plaintiff was able to perform a sedentary job. Tr. at 418-19. On August 8, 2016, Dr. Gomez also submitted an order for personal care assistance, in which she noted Plaintiff's diagnoses of lupus arthritis, back pain, and dysthymic disorder, and opined that Plaintiff required help with activities of daily living due to back and joint pain because she "[could not] go upstairs without difficulty." Tr. at 421-22. Contrary to the regulations, the ALJ did not assign these opinions controlling weight, and, instead, afforded them "partial weight" because they provided little explanation of the evidence Dr. Gomez

---

consider the other *Burgess* factors in evaluating the opinion. Tr. at 30. Because the Commissioner agrees that remand is necessary for this reason, the Court will not address this point of Plaintiff's argument further.

7

relied upon in forming her opinions, were not supported by her own treatment notes, and because they did not discuss Plaintiff's specific work-related functional limitations. Tr. at. 30. After having discounted both opinions, the ALJ formed a highly detailed RFC and determined that Plaintiff could perform sedentary jobs with a number of very specific exertional and nonexertional limitations. Tr. at 24-25.

Because "an ALJ is not a medical professional, and is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y. 2018) (quotations omitted), it is not clear how the ALJ could translate these bare medical findings into highly specific functional limitations that she identified in Plaintiff's RFC. *Dailey v. Astrue*, No. 09-CV-0099(A)(M), 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010), (Because "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings ... [that] merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities ... [the Commissioner may not] make the connection himself."), *report and recommendation adopted*, No. 09-CV-99A, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010).

Even though an RFC determination need not mirror the opinion of a treating provider, *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), it is unclear, however, how the ALJ arrived at such highly specific RFC considering that she had discounted all medical opinions issued by Dr. Gomez that addressed Plaintiff's physical and mental work-related abilities.[3] What is more,

---

[3] On November 5, 2015, Dr. Gomez filled out an employability assessment that discussed both Plaintiff's mental and physical limitations. Tr. at 80. This opinion was not considered by the ALJ but had been submitted by Plaintiff to the Appeals Council, which subsequently rejected it because it did not have the potential to change the outcome of the ALJ's decision. Tr. at 2. This Court finds that it was erroneous for the Appeals Council to do so because the assessment was material to the outcome of Plaintiff's application, relevant to Plaintiff's conditions, and related to the time period for which she sought benefits. *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1990)).

8

the ALJ had acknowledged that Dr. Gomez's opinions did not sufficiently discuss Plaintiff's physical work-related functional limitations. Instead using that as an opportunity to further substantiate the record, the ALJ simply discounted both opinions. For instance, the ALJ imposed limitations that Plaintiff could sit for one hour before having to shift positions and could stand for twenty-five minutes before sitting down while remaining on task. Tr. at 24. It is unclear how the ALJ identified this limitation when the only medical opinion that contained a sit/stand opinion was Dr. Gomez's report in which she noted that Plaintiff can stand/walk for two hours and sit for six hours a day, and as such, could perform sedentary jobs. Tr. at 418. Plaintiff's hearing testimony also did not provide the ALJ with sufficient particularity from which the she could draw such specific conclusions regarding Plaintiff's ability to sit and stand. While Plaintiff testified that she cannot stand for longer than "15, 20, 25 minutes" due to the sleepiness and numbness in her legs, she specifically stated that she cannot sit for too long because of the pain in her back. Tr. at 597-98.

While the Court recognizes that in some circumstances a formal medical opinion is not necessary when the record contains sufficient evidence from which the ALJ can access the claimant's RFC, *see Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order), or when the medical evidence shows a relatively minor physical impairment allowing the ALJ to render a common sense judgment about a claimant's functional capacity. *House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013). However, neither scenario applies to the facts of this case because the record does not contain sufficient evidence from which the ALJ could have arrived at such highly specific RFC, and because most of the record relates to symptoms stemming from lupus, back pain, and depression - impairments that can hardly be

considered minor.[4] Indeed, the record demonstrates that Plaintiff has been suffering from lupus since she was first diagnosed with it in her late teens, and has experienced its varying symptoms intermittently since then. Dr. Gomez opined noted that Plaintiff's lupus with its symptoms of muscle atrophy, headaches, and bone aches, was the main reason why she limited Plaintiff to sedentary work, she also acknowledged that Plaintiff's back pain was the reason for her physical limitations. Tr. at 80, 418. As for Plaintiff's mental work-related limitations, while Dr. Gomez opined that Plaintiff was "seriously limited" in all areas of mental functioning, she, nonetheless, determined that Plaintiff's overall functioning was "not precluded." Tr. at 472.

While objective medical evidence, including Dr. Gomez's contemporaneous treatment notes, demonstrated Plaintiff's periodic flare-ups and complaints of migraines, back pain, depression, joint swelling, facial rash, arthritis, numbness, and weakness in her arms and hands (Tr. at 483-84, 486, 491, 493, 495, 499), the record also contains evidence showing that Plaintiff often had unremarkable examinations, responded well to treatment, psychotherapy and medication, and used coping mechanisms she was taught by her counselor to relieve her depression symptoms. Tr. at. 432-33, 478-79, 486, 488, 493, 499, 504, 519-20, 525, 540, 555, 558, 566, 586-91.

It is also important to note that both Dr. Gomez's opinions addressing Plaintiff's physical limitations were issued prior to Plaintiff's treatment in late 2016 and early 2017 by neurologist Dr. Saikali, who successfully treated Plaintiff's migraine headaches and attention deficits (Tr. at 524-28), and by rheumatologist Dr. Saldaña, who treated Plaintiff for lupus symptoms and eventually prescribed medication to treat them. Tr. at 432-33, 444. Since the ALJ ultimately questioned the

---

[4] https://www.mayoclinic.org/diseases-conditions/lupus/symptoms-causes/syc-20365789; *see also Mead v. Colvin*, No. 3:15CV1331 (AWT), 2017 WL 1134393, at *1-2 (D. Conn. Mar. 27, 2017) (internal citations omitted) (for discussion regarding lupus symptoms).

10

severity of Plaintiff's symptoms and the extent of her treatment, it was imperative for the ALJ to obtain an updated opinion from Dr. Gomez and opinions from Drs. Saikali and Saldaña considering that all three physicians had a treating relationship with Plaintiff and could opine to the effectiveness of their treatment, and ultimately, to the effect of lupus on Plaintiff's ability to work. *See Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *19 (W.D.N.Y. May 7, 2014) ("As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations ..., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing.") (internal citation omitted).

Therefore, even though the record is replete with evidence of Plaintiff's mental and physical limitations, which have been recognized by the ALJ, the Court, nonetheless, finds that determination of Plaintiff's entitlement to benefits cannot be made without the Commissioner's resolving the existing gaps in the record first. Therefore, remand for administrative proceedings as opposed to reversal for calculation of benefits is the appropriate remedy in this case. *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) ("[W]here the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate."), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).

The Court recognizes that remanding this case for further proceedings will unfortunately delay the disposition of this case that has already been pending for over five years. However, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is hereby GRANTED as to remand for further proceedings and DENIED as to award and calculation of benefits, and the Commissioner's motion for remand for further proceedings (ECF No. 17) is GRANTED. This case is hereby REMANDED to the Commissioner for further proceedings consistent with this order. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: February 19, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court